INZER, Justice:
This is an appeal by Owen Turner Holder and Mrs. Etta Banks Holder, doing business as O. T. Holder & Company, from a judgment of the Circuit Court of Alcorn County awarding Hartford Fire Insurance Company and Hartford Accident and Indemnity Company the sum of $2,908.45 on an open account. We affirm.
Appellants, sometimes referred to as Holder, owned and operated a general insurance agency in the City of Corinth and for many years had agency contracts with appellees, as well as with other insurance companies. Under the agency agreement with appellees, either party had a right to *863 terminate the agreement at any time upon written notice to the other party. On May 26, 1966, appellees gave appellants written notice that they were terminating the agency agreement. At that time Hartford Fire Insurance Company instructed Holder not to write any renewal policies with Hartford and to cancel all existing policies on the next anniversary date of the policies beginning August 1, 1966. This order was changed in January 1967 so that all fire insurance policies written by Holder for Hartford with an anniversary date after February 1, 1967, would be allowed to run to expiration.
The casualty business written by Holder for Hartford was not cancelled but could not be written for Hartford on expiration. Holder continued to collect and remit premiums on the casualty business, but only remitted to Hartford a part of the premiums collected. Holder contended that it was entitled to commissions on fire policies that Hartford required him to cancel during this period.
As a result of Holder’s failure to remit all premiums collected, Hartford filed this suit on an open account seeking to recover $2,757.72, plus interest.
Holder answered and admitted that the casualty premiums were due by him to Hartford, but claimed he was entitled to credit against the casualty premiums for commissions on fire policies which he would have earned if the fire policies had run to expiration and had not been can-celled. It was also alleged that Hartford unlawfully, wrongfully and for the willful and express purpose of causing damage to Holder arbitrarily cancelled the fire policies without any reason. Holder also filed a counter claim wherein it was alleged that Hartford by way of retribution against Holder willfully and maliciously instituted a program of wholesale cancellation of policies written through the agency without giving Holder a chance to rewrite the coverage with other companies. It was further alleged that appellant had written Hartford coverage on desirable risks and that Hartford owed appellant a duty to continue the risks so long as they were good underwriting risks and that Hartford breached this duty for the express purpose of injuring him. It was alleged that the cancellation of the policy was an unlawful, willful, and malicious violation of the agency contract. Holder sought to recover actual and punitive damages.
Hartford answered the counter claim and alleged the parties mutually agreed to cancel the agency agreement and Hartford agreed to continue to write all renewals until August 1, 1966, in order to give Holder time in which to write the policies which would be cancelled after August 1, 1966, with other companies that he represented. Hartford denied that it was under any duty to continue the risk or that they breached the agency contract.
A trial was had and after both sides rested the trial court sustained a motion on behalf of Hartford for a directed verdict on the principal suit, directing the jury to find for Hartford in the sum of $2,908.45. The court submitted the issue raised by the counter claim to the jury and the jury returned a verdict in favor of Hartford. Accordingly, a judgment was entered against Holder for the above amount; hence this appeal.
Appellants’ assignment of errors is as follows:
1. The lower court erred in overruling defendants’ motion for a peremptory instruction at the close of plaintiff’s case.
2. The lower court erred in sustaining plaintiff’s motion for a peremptory instruction at the close of the testimony.
3. The verdict of the jury for the counter-defendant on the counter claim is contrary to the overwhelming weight of the evidence and contrary to the law in the case.
*864 Appellants state that the question presented by the first two assignments of error is: “Is an insurance agent who obtains and writes a risk acceptable to the company entitled to his commissions on the premium for the full term of the policy accepted by the insurance company when the policy is prematurely canceled by the insurance company solely for its own convenience?” In order to answer this question it is necessary to examine and consider the provisions of the agency agreement between Holder and Hartford Fire Insurance Company. The agreement is in part as follows:
IT IS HEREBY AGREED between the Company and the Agent as follows:
1. Agent has full power and authority to receive and accept proposals for insurance covering such classes of risks as the Company, may from time to time, authorize to be insured; to collect, receive and receipt for premiums on insurance tendered by the Agent to and accepted by the Company and to retain out of premiums so collected, as full compensation on business so placed with the Company, commissions at rates which may be mutually agreed upon.
2. In the event of termination of this Agreement, the Agent having promptly accounted for and paid over premiums for which he may be liable, the Agent’s records, use and control of expirations shall remain the property of the Agent and be left in his undisputed possession; otherwise the records, use and control of expirations shall be vested in the Company.
It is a condition of this Agreement that the Agent shall refund ratably to the Company, on business heretofore or hereafter written, commissions on canceled liability and on reductions in premiums at the same rate at which such commissions were originally retained.
All the fire insurance policies written by Holder for Hartford were written for a three year period. A very few of the policy holders paid the entire three year premium at the time the policy was written. The other policy holders preferred to take advantage of the method of paying the premiums over a three year period, paying one third of the premium at the time the policy went into effect, and then paying the remaining two thirds on the first and second anniversary dates of the policy. This method is what is commonly known as the deferred payment plan.
Each of the fire policies written by Holder for Hartford and which were can-celled by Holder in accordance with the instructions of Hartford, contained the following provisions:
Cancellation of Policy: This policy shall be canceled at any time at the request of the insured, in which case the company shall, upon demand and surrender of the policy, refund the excess of paid premium over the customary short rates for the expired time. This policy may be canceled at any time by this company by giving to the insured a five days’ written notice of cancellation with or without tender of the excess of paid premium over the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand.
The record reflects that during the period from August 1, 1966, until February 1967 Holder cancelled, as instructed, 131 policies which were written on the deferred payment plan, and all but a few of these policies were rewritten by Holder and placed with other companies. None of the policies were rewritten by Hartford. In fact, insofar as the record shows, Hartford has not written any fire insurance in this territory since it cancelled the agency agreement.
It is Holder’s contention that the insurance policies that were cancelled were written on good and acceptable risks and *865 were approved by Hartford, and that there is nothing in the record to indicate that they would not have remained in effect if they had not been cancelled by Hartford for its own convenience. Holder also contends that he had earned his commission when he wrote the policy on a good underwriting risk, the contract was accepted by Hartford, and Hartford could not deprive him of his earned commission by a premature cancellation of the policy for its own convenience. Thus, Holder claims he was entitled to have Hartford pay him commissions which he would have earned and would have collected if the policies had run to expiration. On the policies on which the premiums were paid in full at the time of their issuance, Holder claims that he does not have to refund his commission on a pro rata basis because the policies were cancelled by Hartford and not the insured.
On the other hand Hartford contends that under the agency agreement, appellants were not entitled to any commissions on the cancelled deferred payment policies because the agreement provided that appellants were only entitled to commissions on the premiums actually collected, and when the policies were cancelled, no premiums were collected. As to the few policies for which the premiums were paid in full when written, Hartford contends that the agency agreement requires that Holder refund to the company at the same rate at which the commissions were originally retained.
Holder does not contend .that Hartford did not have a right to cancel the agency agreement. In fact, he says it was can-celled by mutual agreement. He admits that Hartford had the right to cancel the policies in question for any reason that it saw fit, but contends that when they did so, for their own convenience, he was entitled to his commission for the full term of the policy, whether collected or not.
Counsel do not cite, and we have been unable to find any decision of this Court that is controlling on the issues raised. We have examined and considered the decisions of the courts of other states construing similar contracts, as well as recognized text authorities in this field, and we hold that the agreement by the agent to ratably refund commissions on cancelled policies is binding, although the policies were cancelled by Hartford for its convenience. Of course, a different situation would exist if Hartford had cancelled the policies and rewritten them in order to deprive Holder of his commission. Holder was aware that the policies that he had written for Hartford contained a clause giving Hartford the right to cancel the policies at any time it desired for any reason satisfactory to it. His agency agreement required him to ratably refund to Hartford his commission retained when the policies were cancelled. The agreement did not limit the refund of commission to cancellation by the insured as contended by Holder.
As to Holder’s right to commissions on the cancelled policies written on the deferred payment plan, it is clear that Holder is not entitled to collect from premiums for the full term of these policies. By the terms of his agency agreement, he was entitled to commissions from premiums actually collected by him. When the policies were cancelled on the next anniversary date, no premiums were collected by him for Hartford. He was well aware when he wrote the policies that they could be cancelled at any time by Hartford or the policy holders and that they might not run for the full term of three years. By directing him to cancel the policies on the next anniversary date occurring after August 1, 1966, Hartford gave Holder ample time to rewrite the policies with other companies which he represented. In fact, he did rewrite most of the policies with other companies.
We hold that the trial court was correct in granting a peremptory instruction directing the jury to find for the appellees in the principal suit.
*866 We find no merit in the assignment of error that the verdict of the jury on the counter claim is contrary to the overwhelming weight of the evidence and contrary to law. Our examination of the record reveals that there is ample evidence for the jury to find that the cancellation of the fire insurance policies by Hartford is not characterized by willfulness, wantonness, malice, pressure or outrageous conduct designed to injure the business of the appellant.
For the reasons stated, we are of the opinion that this case should be, and it is affirmed.
Affirmed.
RODGERS, P. J., and JONES, BRADY and SUGG, JJ., concur.